Yes your honor. May it please the court. My name is Sean Cox and I represent the appellant here, Ms. Valerie Jackson. This appeal involves a motion to recuse under 28 USC 144 and 455 and a motion to dismiss. Now as a matter of brief background, Ms. Jackson was arrested and taken to the Dallas County Jail. I know all that counsel. I'm sorry? We know the facts. Okay all right. I'll just jump in right into the recusal if that's all right with the court. We filed a an affidavit based on allegations of bias by Judge Brantley Starr regarding his positions that he has advocated for for a large portion of his career before assuming the bench that were against LGBTQ and specifically transgender civil rights. Now we submitted an affidavit that provided the reasons for the believed bias and the facts supporting that belief. At that point under section 144, Judge Starr was to look at the affidavit, determine if it was legally sufficient, meaning that it was verified by counsel as being filed in good faith and that it contained the reasons and factual allegations for why bias existed. At that point and this is according to Justice Southwick and Netsphere Baron that the judge should have stepped aside and proceeded no further and must only have passed on the legal sufficiency of the affidavit without passing on the truth of the matter asserted. But that's not what happened here. Judge Starr instead of stepping aside, he provided a 12-page opinion refuting the allegations of bias and went into point by point attack on it and required authoritative evidence and that he would provide no deference to the affidavit without authoritative evidence of his bias. This is a textbook example of what a judge is not supposed to do when they receive a 144 affidavit. Section 144 specifically is designed to not only protect litigants rights and the party's rights before appearing before a judge and to assure that their due process rights are protected by not having a biased judge preside over their case, it's also there to protect criticism of the judiciary and it does so by not requiring and relieving the judge of the duty to or the need to either admit to a bias or prejudice or to defend against a claim of bias or prejudice. The judge is simply to step aside and to allow another judge to preside over the matter and there is only one opportunity to file an affidavit of this sort. We filed that affidavit, it was legally sufficient and Judge Starr should have stepped aside and failing to do so was an abuse of discretion. Now this goes into the into section 455 as well and under 455 any judge, justice or magistrate of the United States is required to disqualify himself in any proceeding in which his impartiality might reasonably be questioned. And this is a . . . So let me stop you there. You have a limited amount of time. I'm not saying your arguments about Judge Starr are insignificant and we'll have to consider them but we do have your brief thing and you do have your opening argument. I wish you would turn to the merits at this point and assist us in understanding why it was improper to dismiss this complaint. Oh, on the under the 12b6 motion? Yes. Okay. Well it's, it was improper for one thing is that because Judge Starr should have recused anything that came after that is essentially a legal nullity and should be vacated. There never should have been a dispositive order. Please, please move on. Let's assume for the rest of your argument that we're not going to say he should have recused himself. Okay. Um, in this case, we, we've alleged a manel action and, um, against Dallas County. Um, now what we must do is we must allege a policy, um, that was in place that was the moving force behind the violation of Ms. Jackson's civil rights. Now we do not have to . . . You say there was unwritten policy relying on these statements by a jailer as to, to support that. Um, you're seeking discovery. If you could be on this, no doubt to figure out what all that's about. Uh, does it make a difference whether it's a custom or a more formal policy and your understanding of liability, um, the rules here? Well, your honor, that's, you can show a policy either by a written policy or you can show it by a custom and practice. And here we have an actual statement from the individuals who were tasked with enforcing this practice, this custom and this unwritten policy and actually attributing it to the policymaker, Lupe Valdez, who was the Dallas sheriff. So this is not simply, um, a situation where we need to show a pattern of abuse. We actually have a of the policy that, um, genital searches were required to determine the biological sex of, um, detainees, um, which this policy, that policy or practice right there is in violation of the Prison Rape Elimination Act and the Fourth Amendment, um, for unreasonable purchase. But it is also directly attributed to the policymaker, um, Sheriff Lupe Valdez. So this is not a need to show a number of different instances of this because we actually have a statement as to what the policy was that they were enforcing and that that policy came from Lupe Valdez. Now, viewing the allegations in the light most favorable and drawing all inferences in our favor, that's sufficient to be able to have alleged a Manel claim on this basis. Now, the district court was not impressed with the source of your information about policy and the frequency of your of your assertions that something like this had occurred. Uh, you're suggesting that your assertions about the existence of policy to some extent obviate the need to show very frequent application of it. How do you respond to the district court's rejection of this on the basis of these individuals who you refer to some of them being well, your honor, we have the actual people enforcing it that are forcing the policy, um, that are here telling the, um, the plaintiff for the appellant exactly what the policy is and that it was attributable to, um, the the sheriff, the policymaker. So we have we have a direct statement here. This is kind of similar to the groating case, um, in which a non policymaker employee that, um, uh, stated what the policy was that was being put into play and attributing that to the policymaker. It's not a very different circumstance. The only clear example of or clear, I guess, statement of policy would be if Lupe Valdez came down to the jail and told Miss Jackson, this is my policy and this and I have established it. But the law doesn't require that. The law requires that we show that there was a practice, um, and a an unwritten policy that is attributable to the policymaker. And that's what we've done. And in addition to that, we've shown that there was a practice. So you've shown that there was an unwritten policy attributed to the policymaker or both. I think one of your I think we've done both. Your honor is because we actually have an example of this being put into practice, and we have regards of practice. You got two incidents of strip searches and four incidents of misclassification of two transgender people in the span of five years. Is that it? That's what we have regarding. Yes. So far, without the benefit of discovery, that's what we have. All right. And your contention is that that is sufficient evidence of a practice. Persistence widespread. You if if if we're yes, if we don't have a an actual statement of the policy attributable to the policymaker, but it's our position. We don't. We don't need to show that that position and that because you have a state. I'm sorry. You don't need that. You don't need that show persistent widespread policy because you have a statement. Is that we have? Yes, exactly. And the statement is the deputy saying to Miss Jackson, uh, that's our policy. You know, well, that's yes, that is our policy. And if you don't like it, talk to the policymaker, Lupe Valdes. All right. Now, um, in addition to that is we also have a claim that there was, um, delivered indifference regarding the failure to train on the proper policy. Now, Dallas County actually had a policy, a written policy that would have complied with the Prison Rape Elimination Act. But the people tasked with enforcing that policy and dealing with transgender individuals and transgender detainees in the jail were not trained on that policy. And we know that because they weren't performing it. They were actually telling, um, individuals in the jail that that was not the policy. The policy was to inspect the genitalia of detainees to determine whether they are male or female. What is the relevance of the statute? The P. R. E. A. Whatever the acronym is, it's the period. Um, it actually provides that you that jails and this is in state. I understand what the statute says. But what is the relevance to human nail claim is? Can it be the source of the federal right? Uh, does it need to provide or be interpreted to provide a private right of action? Uh, help me understand how if it has if which this is strictly a constitutional claim, if you're gonna succeed, or how can that statute help you? Well, um, for one thing, I believe that it does establish a federal right. It doesn't establish a cause of action, an individual cause of action. That's true. What it does provide, most importantly, is it defines what conduct is prohibited. And in the analysis of a Fourth Amendment claim of an unreasonable search, the Prison Rape Elimination Act shows that this was an unreasonable search because it is specifically prohibited by federal law. That's where the most relevant reference to the prison rape elimination comes. Is that act been used in this way in any case law you found? Um, I'm not sure, Your Honor. You haven't found it's been related in relation to the Fourth Amendment or not, or that's just our position that we've advocated in this case. But I believe that if a federal statute declares that, um, conduct is that should not be performed or prohibit certain conduct, that that at least is a sufficient evidence to raise an allegation of a violation of the Fourth Amendment. Um, when a search violates that federal law, I think that that's that at least goes far enough to allow us to pursue a motion. Now, right now, regarding the failure to train, um, here it's there could be a demonstration of deliberate indifference, um, to the rights of individuals when there is a failure to train on the appropriate way to, um, address those, uh, situations, those individuals, such as in the use of force case. If a officer is not trained in the proper use of force, um, in situations, then that could be considered deliberate indifference to individuals rights who come into contact with that officer. Um, the same situation applies here, where in the context of, um, transgender individuals, um, going through intake at a detention center, if they are not trained on the proper policies in relation to placement of those individuals, um, in whether the population or performing searches of transgender individuals, because it is known that these detention officers are going to confront these circumstances and they are not trained on the proper policies and manner of handling the situations that is considered evidence of deliberate indifference to the rights of those individuals with whom they come into contact. And that is sufficient to also support a manel claim for the failure to train. Yeah, I see it. My time is wrapping up. Um, I just briefly conclude that we believe that Judge Starr should have recused under both 1 44 and 4 55 and that, um, the motion dismiss was improperly granted, both because Judge Starr should have recused and because we adequately pled our claims for under Manel. Thank you. All right, Mr Cox. We'll hear from you again in 20 minutes or so. The council for the sheriff and others can proceed. Good morning, Your Honors. May it please the court. My name is Chong Cho, and I am the current Dallas County Sheriff Lupe Valdez and current Dallas County Sheriff Marion Brown. Regarding the new sheriff been formally added as a party? Yes, Your Honor. All right. Regarding the claims made by appellant in this case, they're obviously broken down into two categories, one regarding the recusal issue and then second regarding the, uh, approval of the findings, conclusions and recommendations of Magistrate Judge Irma Ramirez and granting appellees 12 B six motion with respect to the recusal. Uh, opposing counsel did actually raise two separate statutes 28 U. S. C. 1 44 and 4 55, both of which carry different standards. As pointed out in opposing counsel's brief, 1 44 requires only a passing on the legal sufficiency. However, 4 55 does require a factual analysis, which is what occurred in this case. Um, in reviewing the memorandum in order of District Judge Brantley Star in this case very carefully, we can see that even though he does provide legal analysis of the reasons why the be characterized as personal, he does provide additional factual analysis. However, he does not rely on that analysis in concluding that section 1 44 does not apply. Rather, if you look to the last page of his order where he mentions the factual analysis, it's with respect to his conclusions regarding section 4 55. Therefore, what he did was he laid out that, uh, the proper standard for section 1 44, which is that the facts would be material and stated with, uh, particularity that if true, a reasonable person would find that they showed bias and that they showed personal rather than judicial bias. Um, next, um, he laid out the standards for 4 55, which would require that a well informed, thoughtful, reasonable, objective person in reviewing all of the facts and circumstances would find that there there would be a need for recusal. In this case, what he did was he analyzed these statements in the affidavit, which he then determined that because they occurred in the course and scope of his advocacy for the state of Texas did not rise to the type of personal, um, facts which would show bias that would justify recusal under 1 44. Next, he addressed the questions and answers in the Senate confirmation process. And while he says that appellant misconstrued some of those statements, he never once said I never said that. Um, rather, he pointed out that, uh, in those instances, what occurred was that, uh, what was characterized as him refusing to answer was actually him saying that he would follow Obergefell and any other U. S. Supreme Court and Fifth Circuit precedent fully and faithfully. Therefore, based on that reasoning, he was permitted to find that the affidavit was not legally sufficient to justify his recusal. He then goes to Section 4 55 and states that factual analysis would not lead a well informed, reasonable person to find that recusal was warranted in even that situation. Next, I move on to the 12 B six motion with regard to the 12 B six motion. Um, the appellant seems to attempt to find that there was a policy in two ways. One by showing that there was an express policy, that being that the express policy was to actually violate the official written policy of Dallas County. And he does so by trying to attribute that, uh, to statements made by non policymaking employees relying on case of Grodin v City of Dallas. However, the circumstances of that case are completely different from those in this case. Uh, in the Grodin case, we were actually dealing with statements made by an official spokesperson for the city of Dallas, who then gave media interviews regarding the implementation of the policy. Um, that's nowhere near the same circumstance as two employees, um, in the middle of intake, making statements regarding policy and not necessarily providing clarification on what that policy was. Okay. Also, we have a 12 B six year. There's not been any discovery. You have someone who's, according to the allegations of the complaint, has gone through this experience herself and has had. It's said to her that the policy of this jail is set by the then sheriff is X. And here we were implementing that policy. Watch us. Uh, you know, not everything's done through press releases. Uh, it does seem to me you take the case that you have is something like that. If it I mean, it could very well act. I'm not saying that it does take the as true in deciding a sufficiency. If that is the situation, what more could a plaintiff have without discovery? Uh, well, in that case, your honor, um, they would still they could still look to custom and usage to show that this type of incident was occurring a number of times, um, with a frequency or by the I mean, you acknowledge as much in briefing, isn't that affected by the population that would be subject to this? And, uh, I don't have any idea what the numbers would be. But if it's a fairly small part of the population, there would not be a lot of examples. And, uh, and she does have some examples. Uh, yes, your honor. And to the extent that she has listed three incidents with herself and one with another unknown witness, there's a possibility of as many as four instances over the course of five years. However, the plaintiff has not alleged any information regarding the size of this population, just that it's small, which would mean that any plaintiff could say that whatever population that they're trying to allege is small, whether it be any minority group or a group of a different ethnicity. Therefore, there should be some burden on the plaintiff to try and delineate what that should be and provide an additional explanation as to why the sample size should not be as large as they're attempting to say that is the case in the case present. But going on, um, because the statements made were made by non policymakers on the closest statement, which opposing counsel seems to hang his hat on, is the one alleged comment where someone said, if you have any concerns, speak to Lupe Valdez. That is not an acknowledgement that Lupe Valdez knew of the policy or even approved of the policy. That's just saying that if you have a problem, this is who you should take it up with. Therefore, that statement in and of itself does not link the policymaker to the policy that's being complained of. Well, this one of the quotes and the and the complaint is that this deputy whoever said that's our policy, the exposure, that's our policy. You can talk to Lupe Valdez about it when you get out. I mean, it could have been the plaintiff has what she says she has. That's what was said. That's certainly a fair reading of that, that that if you don't like the policy, talk to this person who is relevant to the policy when you get out. And it's our policy. You know, cross examination would say, What do you mean by our hour? You two jailers who are here tonight or the sheriff. But I mean, is that the problem with this is that what was said to her was not more detailed insofar as we accept what's in the complaint is what was actually but what actually happened? Well, your honor, the additional problem is who said it again. We're still talking about a non policymaker, not even to the level of an official spokesperson for Dallas County. Um, speaking on behalf of Lupe Valdez. Uh, this, you know, if we were to allow non policymaking employees to somehow express what written policy is, that would beg the question. At what point does someone become a high enough level that they are permitted to express official policy? I guess one of the concerns, though, counselors that we're here on a motion to dismiss where the plaintiff hasn't had an opportunity to do any discovery. I mean, maybe this deputy would say that's totally. We don't know because we're on a motion. Isn't that a problem? Well, your honor, that would be if his the opposing counsel's only recourse was to show that there was an express policy again. They still do have the recourse of trying to show that there was a custom and practice through a number of incidents or a frequency over a certain period of time that would um, many more times. Uh, as an express policy, what he's basically saying is they have to do that without the benefit of discovery. Well, yes, your honor. However, they're attempting to shoestring themselves around the idea that there is an express policy, um, which may which would mean that if gender more cases, we don't know what that number might be. But the appellant has been unable to bring forward any evidence of enough cases so that we can even see that this is actually, uh, enough, enough of a common usage. Um, so without that express policy, um, it would be, it would be up to the budget in their complaint. Um, that said, um, we would move on to, uh, the appellant's failure to train issues, which, uh, he brings up several issues here, which somewhat, um, conflict. And it would appear that they complain about this policy of searching, uh, strip searching inmates in order to identify gender. Um, they also complain that after the 2016 incident, which is when the strip search occurred during the 2017 and 2018 incidents, um, due to a failure to train, she was then placed with the male population again. So the procedure being complained of, um, is not necessarily that a strip search occurred in those occasions, but that she was placed with the male population. Um, and the failure to claim is alleged very generally without, uh, any particular notice as to exactly what the ineffective training was. Um, nor do they provide any explanation for how something like this could have been prevented by some other additional training. The odd situation in this case is that, um, Miss Jackson, um, was transitioning to become female. Therefore, she was half female from the waist up and half male from the waist down. Um, it seems odd to say that, um, this issue might not have been problematic because it does not seem to be the type of case that would occur very often. Um, as such, um, they've been unable to show that any type of training program was ineffective, and then they've been unable to show that there would have been any different outcome if a training program was put in place. And for all of these reasons, uh, the appellees would state that, uh, this appeal should be denied. Um, I see I have additional time. If you have additional questions, we're here on a rule. We're here on a rule. 54 be motion allowing this appeal by the county in the form of the county and the two sheriffs in their official capacity. Who are the other three defendants remaining in this case? At least when the briefs were filed, there were three remaining. There are two low level jail employees listed as well as an unknown employee identified as a nurse. All right. Thank you. All right, Council. Thanks for your argument, Mr Cox. Yeah. Mr Cox. Can you hear us? I apologize. I am. I muted it during the other councils are. That's a good thing to do, and it's hard to remember. Get it back on again. Okay. Um, quickly, the regarding the recusal issue. Um, it was claimed by both Judge Starr and by, um, at least that, um, the actions and the comments that which we base are, um, most recused were for comments and actions taken as a litigator. Um, but none of the comments. None of the actions that we're that we address occurred in the courtroom or in the course of litigation. They were press press statements. They were panel discussions, lit opinion letters. Um, so we it's simply was not the actions taken regarding litigation. Um, and that's not even the distinction that is looked at. It's whether it was a judicial bias or a such as conduct taken in the while the judge is on the bench while he's actually presiding judge. Um, as opposed to a personal advocated for these policies. Um, and that was not during the course of while he was a judge. And so that distinction is not really important. But he was a deputy attorney general. It was your honor, but he was not acting as a relative time. He was deputy attorney general for state attack. Yes, your honor. But the actions of which we base our claim upon it were not litigation activities. They were advocacy for policy, and I believe that's a distinction that's important. Um, and but it was part of his job as deputy attorney general for the state of Texas to handle matters like that wasn't even I'm not just litigating other matters. I suppose that would be, um, that that's true and that he may have advocated while in his role as an attorney general. However, that was this is part of his career. This is what has been the path of his career, and a large part of it has been spent advocating against the rights of, um, the LGBTQ community and specifically transgender individuals. Um, these were not in court prosecuting crimes and things of that nature. These were press statements. These were public square. Um, and I think that distinguishes them from just a mere claim that I was just doing my job. Um, I don't think that that we are required as litigants in front of him, um, to accept his disavowal of those positions or that he did not personally hold them. Yet he advocated them for years and built a career upon. Um, now, um, there's also I want to point out that under 4 55, um, the standard for recusal is is whether a reasonable person would would doubt the judge's ability to be impartial. And I would just like to point out that, um, two organizations, um, filed letters to the Senate during the confirmation hearing that doubted Judge Stars ability to be impartial. And those are the leadership Conference for Civil and Human Rights and Alliance for Justice. And four senators submitted questions to Judge Star, um, inquiring as to his ability to be impartial, um, regarding transgender and the individuals in the LGBT community in general. These are all reasonable people, and they appear to have had reasons to doubt his ability to be impartial in cases involving transgender individuals. Now, um, I would like to point out that the Apple ease have not provided any answer as to the questions from the bench regarding what could we have provided as appellants with? What more could we have provided without discovery regarding a pattern or a history of specific? And, um, that is one of the big problems here is we have, um, of this repeated, um, violation of civil rights. And if we if we are not allowed to do discovery to determine more, and it's specifically to determine a pattern in the in the sheriff's department, then we are, um, hamstrung on being able to prove our case. We have provided examples, and with discovery, we anticipate being able to uncover more. Um, and I also just like to point out, it sounds as though opposing counsel is saying we must show not only a policy but also a pattern of repeated conduct violating order of that violent policy. And that's just simply not true. We cocks. That's good. It's not true. We got your argument. Thank you, Your Honor. I appreciate the time thing. We appreciate both of you helping us understand this case, and we'll take it down to advisement. Do your arms. Thank you.